UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID PRIEST,

Plaintiff,

v.

BENTLEY, et al.,

Defendants.

No.  2: 21-cv-0058 TLN KJN P

FINDINGS AND RECOMMENDATIONS

I.      Introduction

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' supplemental summary judgment motion.  (ECF No. 75.)  For the reasons stated herein, the undersigned recommends that defendants' supplemental summary judgment motion be granted.

II.     Legal Standards for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

////

////

1

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)). "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587; Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By notice provided on September 24, 2021 and December 22, 2022 (ECF Nos. 28, 73-3), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

////

3

III.      Plaintiff's Claims

*Background*

This action proceeds on plaintiff's original complaint as to defendants Kuersten and Sanchez.  (ECF No. 1. )  On March 30, 2021, service of process was returned unexecuted on defendant Bentley because he is deceased.  (ECF No. 19.)  On November 3, 2021, defendant Bentley was dismissed pursuant to Federal Rule of Civil Procedure 25.  (ECF Nos. 30, 34.)

This action proceeds on the following claims alleging violation of plaintiff's Eighth Amendment right to adequate medical care:  1) on July 19, 2018, defendant Sanchez failed to perform a physical examination of plaintiff and failed to provide adequate pain medication; 2) defendant Kuersten denied plaintiff's request for an MRI; 3) defendants Kuersten and Sanchez denied plaintiff's request for a wheelchair; and 5) defendants Kuersten and Sanchez failed to place a medical hold on plaintiff to prevent transfer to another institution while plaintiff was in the middle of the medical evaluation process.  (ECF No. 70 at 6.)

On August 22, 2022, defendants filed a summary judgment motion addressing all of plaintiff's claims, except for the claim alleging that defendants Kuersten and Sanchez failed to place a medical hold on plaintiff to prevent his transfer.  (ECF No. 64.)  On November 2, 2022, the undersigned recommended that defendants' summary judgment motion be granted.  (ECF No. 70.)  The undersigned also granted defendants thirty days to file a supplemental summary judgment motion addressing plaintiff's claim alleging defendants' failure to place a medical hold. (Id.)

On February 8, 2023, the Honorable Troy L. Nunley adopted the November 2, 2022 findings and recommendations.  (ECF No. 81.)

On December 22, 2022, defendants filed a supplemental summary judgment motion. (ECF No. 75.)  On January 26, 2023, plaintiff filed an opposition.  (ECF No. 80.)  On February 10, 2023, defendants filed a reply.  (ECF No. 82.)

*Plaintiff's Allegations*

The undersigned herein sets forth the allegations in plaintiff's complaint that are relevant to plaintiff's remaining claim.

4

Plaintiff alleges that on July 18, 2018, at 1000 hours, plaintiff loaded mattresses onto a flatbed trailer as part of his prison work assignment.  (ECF No. 1 at 3.)  While loading the mattresses, plaintiff fell to the ground, injuring his neck, back and hip.  (Id. at 4.)  The Quad Officer asked if plaintiff was "alright."  (Id.)  Plaintiff responded that he hurt his back.  (Id.)  The Quad Officer refused to file an injury/incident report or refer plaintiff to the medical department for evaluation.  (Id.)

On July 18, 2018, at 1300 hours, plaintiff assisted the facility store manager with the loading/bagging of inmate canteen orders.  (Id.)  This task involved plaintiff using his back muscles.  (Id.)  While performing this task, plaintiff heard his back pop and experienced increasing back pain.  (Id.)

On July 18, 2018, at 2100 hours, plaintiff walked to his housing unit, carrying a bag of canteen items.  (Id.)  Plaintiff fell into an open ditch.  (Id.)  This fall "compounded the earlier back, neck and hip injury."  (Id.)  Correctional Officer Santos helped plaintiff up and escorted plaintiff to his housing unit.  (Id.)

On October 11, 2018, plaintiff was seen by Dr. Williams via teleconference.  (Id.)  Plaintiff told Dr. Williams that he fell off the flatbed trailer and that his request for an MRI was denied.  (Id.)  Dr. Williams had a nurse perform a physical examination of plaintiff.  (Id.)  Dr. Williams told plaintiff that he would submit a recommendation to Dr. Bentley that plaintiff receive an MRI, asap.  (Id.)  Dr. Williams told plaintiff that once the MRI was done, Dr. Bentley would reschedule plaintiff to have another appointment with Dr. Williams.  (Id.)

Plaintiff had the MRI on November 23, 2018.  (Id. at 8.)  On November 27, 2018, a doctor pulled up plaintiff's medical file and MRI and told plaintiff that he needed an operation because his back was "toast."  (Id.)

On December 4, 2018, plaintiff was transferred to the California Substance Abuse Treatment Facility ("SATF").  (Id.)  The mode of transportation was a standard van.  (Id.)  Due to his back problems, plaintiff suffered pain during the transport.  (Id. at 9-10.)  Plaintiff alleges that the van had no wheelchair lift or wheelchair security features.  (Id. at 9.)

On December 12, 2018, plaintiff had a spinal operation.  (Id. at 10.)

5

Plaintiff alleges that despite his medical problems, discussed above, no defendant placed a medical hold on plaintiff to prevent his transfer to another institution while plaintiff was in the middle of the medical evaluation process.  (Id. at 8.)

IV.   Legal Standard for Eighth Amendment Claim Alleging Inadequate Medical Care

Where a prisoner's Eighth Amendment claim arises in the context of medical care, including mental health care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104).  Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities."  Id. at 1059-60.  By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prisoner officials responded to the serious medical need with deliberate indifference.  See Farmer, 511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also

1    Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in

2    diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth

3    Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate indifference is "a state of

4    mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for

5    the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835.

6          A delay in medical treatment does not violate the Eighth Amendment unless that delay

7    causes further harm.  McGuckin, 974 F.2d at 1060.

8          Finally, mere differences of opinion between a prisoner and prison medical staff or

9    between medical professionals as to the proper course of treatment for a medical condition do not

10   give rise to a § 1983 claim.  See Toguchi, 391 F.3d at 1058.

11       V.    Discussion

12            A.   Plaintiff's Objections to Defendants' Evidence

13         In support of their statement of undisputed facts, defendants submitted the declarations of

14   defendant Sanchez, defense counsel and medical expert Dr. Feinberg  (ECF Nos. 75-4, 75-5, 75-

15   7.)  In his opposition, plaintiff raises objections to these declarations.  (ECF No. 80.)  The

16   undersigned addresses plaintiff's objections herein.

17         *Defense Counsel's Declaration*

18         In his declaration defense counsel states, in relevant part,

19              I make the following declarations of facts based upon my own
                knowledge, as explained below.  If called, I can testify competently
20              to the facts contained in this declaration in support of defendants'
                supplemental motion for summary judgment.
21
                Attached hereto as Exhibit A is a true and correct copy of an Inmate
22              Classification Committee Review conducted at California State
                Prison-Solano concerning plaintiff David Priest dated November 14,
23              2018.

24   (ECF No. 75-4 at 2.)

25         Attached to defense counsel's declaration is a declaration by J. Barba, Litigation Office,

26   California Substance Abuse and Treatment Facility and State Prison Corcoran.  (Id. at 4.)  J.

27   Barba states that they are the authorized custodian of records and have the authority to certify

28   these records as true and correct.  (Id.)  J. Barba states that the original records, of which copies

1  are enclosed, were prepared by the personnel of this business/agency in the ordinary course of

2  doing business at or near the time of the act, condition or event of which they reflect.  (Id.)  J.

3  Barba identifies these records as being from the Electronic Record Management Systems

4  ("ERMS") file and the Strategic Offender Management System ("SOMS") file.  (Id.)

5          Attached to J. Barba's declaration is the copy of the Inmate Classification Committee

6  Review conducted at California State Prison-Solano concerning plaintiff David Priest dated

7  November 14, 2018.  (Id. at 5-8.)

8          In his opposition, plaintiff argues that the defense counsel's declaration did not properly

9  authenticate the Inmate Classification Committee Review record attached to his declaration

10  because defense counsel has no personal knowledge of the authenticity of this record.  (ECF No.

11  80 at 1-2.)  The undersigned finds that the declaration of J. Barba, discussed above, properly

12  authenticates the Inmate Classification Committee Review record.  See Fed. R. Evid. 803(6)

13  (addressing authentication of records of a regularly conducted activity).  Accordingly, plaintiff's

14  objections to the authentication of the Inmate Classification Committee Review record are

15  overruled.

16          *Defendant Sanchez's Declaration*

17          Plaintiff argues that the declaration of J. Sanchez is not properly signed.  (ECF No. 80 at

18  2.)  Local 131(f) contains the standard for a non-attorney's electronic signature:

19              Documents that are required to be signed by a person who is not the
               attorney of record in a particular action (verified pleadings,
20              affidavits, papers authorized to be filed electronically by persons in
               pro per, etc.), may be submitted in electronic format bearing a "/s/"
21              and the person's name on the signature line along with a statement
               that counsel has a signed original, e.g., "/s/ John Doe (original
22              signature retained by attorney Mary Roe."

23  Local Rule 131(f).

24          Defendant Sanchez's electronic signature in her declaration contains only her typed name.

25  (ECF No. 75-5 at 3.)  Therefore, defendant Sanchez's electronic signature does not comply with

26  Local Rule 131(f) because it does not contain "/s/" or a statement that counsel has a signed

27  original.  (Id.)

28  ////

8

In the reply to plaintiff's opposition, defendants admit that defendant Sanchez's declaration "does not precisely comport with the requirements" of Local Rule 131(f).  (ECF No. 82 at 3-4.)  Defendants argue that the failure to comply with Local Rule 131(f) is not a basis to disregard defendant Sanchez's declaration.  (Id. at 4.)  Defendants also argue that plaintiff failed to comply with Local Rule 131(g), which provides that a party who disputes the authenticity of an electronically filed document with a non-attorney signature must file an objection and request for the document to be stricken within twenty-one days of receiving the Notice of Electronic Filing. Defendants appear to claim that plaintiff failed to request that the declaration be stricken within twenty-one days of receiving the declaration.

While plaintiff did not file a motion to strike defendant Sanchez's declaration, the undersigned finds that plaintiff properly raised his objections to the declaration in his opposition. The undersigned also finds that plaintiff's objections are timely.  In his opposition, plaintiff states that he received defendants' summary judgment motion on January 4, 2023.  (ECF No. 80 at 1.) Pursuant to the mailbox rule, plaintiff filed his opposition on January 22, 2023.  (ECF No. 80 at 6.)  Therefore, plaintiff filed his opposition within twenty-one days of receiving the declaration.

The undersigned orders defendant Sanchez's declaration stricken for failing to comply with Local Rule 131(g).[1]

*Dr. Feinberg's Declaration*

Defendants submitted the declaration of Dr. Feinberg.  (ECF No. 75-7.)  In his declaration, Dr. Feinberg offers his expert medical opinion regarding plaintiff's claim alleging that defendants failed to place a medical hold.  (Id.)  Dr. Feinberg describes his qualifications as a medical expert in his declaration.[2]  (Id. at 1-2.)  Dr. Feinberg states that his expert medical opinion is based on his review of plaintiff's complaint, the court's November 1, 2022 order, the

---

[1] Because the undersigned herein finds that defendants' supplemental summary judgment motion should be granted without consideration of defendant Sanchez's declaration, the undersigned does not grant defendants leave to file a properly signed declaration by defendant Sanchez.

[2]  In support of Dr Feinberg's declaration submitted in support of defendants' first summary judgment motion, defendant also submitted a document describing Dr. Feinberg's education, professional experience and highlights of qualifications.  (ECF No. 64-3 at 2.)

1    California Correctional Health Care Services ("CCHCS") Health Care Department Operations

2    Manual ("HCDOM"), and his analysis of the medical records kept by CCHCS documenting the

3    medical care provided to plaintiff.  (Id. at 3.)

4          In his opposition, plaintiff refers to arguments made in his opposition to defendants' first

5    summary judgment motion, where he objected to defendant Feinberg's declaration submitted in

6    support of that motion.  In his opposition to defendants' first summary judgment motion, plaintiff

7    challenged Dr. Feinberg's qualifications as an expert because he did not personally witness any of

8    the actions complained of.  (ECF No. 67 at 6.)  Plaintiff argued that Dr. Feinberg's declaration

9    was not admissible because it was not based on personal knowledge.  (Id.)

10         Federal Rule of Evidence 702 provides,

11            A witness who is qualified as an expert by knowledge, skill,
              experience, training, or education may testify in the form of an
12            opinion or otherwise if:

13            (a) the expert's scientific, technical, or other specialized knowledge
              will help the trier of fact to understand the evidence or to determine
14            a fact in issue;

15            (b) the testimony is based on sufficient facts or data;

16            (c) the testimony is the product of reliable principles and methods;
              and
17

18            (d) the expert has reliably applied the principles and methods to the
              facts of the case.

19   Fed. R. Evid. 702.

20         Rule 702 "establishes a standard of evidentiary reliability."  Daubert v. Merrell Dow

21   Pharms., Inc., 509 U.S. 579, 590 (1993)

22         After reviewing Dr. Feinberg's declaration, the undersigned finds that Dr. Feinberg is

23   qualified to offer his expert medical opinion regarding the remaining issue in this action based on

24   his review of plaintiff's medical records.  Dr. Feinberg is not required to have personally

25   participated in plaintiff's treatment to be qualified as an expert regarding plaintiff's medical care.

26   Accordingly, plaintiff's objections to Dr. Feinberg's declaration are overruled.

27   ////

28   ////

10

1          B.   Undisputed Facts

2          Defendants filed a statement of undisputed facts in support of the supplemental summary

3    judgment motion.  (ECF No. 75-1.)  Plaintiff did not file a response to defendants' statement of

4    undisputed facts, as required by Local Rule 260(b).

5          The undersigned herein sets forth defendants' statement of undisputed facts, referencing

6    the evidence cited by defendants in support of each undisputed fact.[3]

7          *Undisputed Fact No. 1:*  Plaintiff David Priest, a California Department of Corrections

8    and Rehabilitation ("CDCR") prisoner, was housed at California State Prison-Solano ("Solano")

9    during relevant portions of the events alleged in his complaint.  (ECF No. 75-1 at 2 (defendants'

10   undisputed fact no. 1 citing plaintiff's complaint (ECF No. 1)).)

11         *Undisputed Fact No. 2*:  Defendant Sanchez was a Nurse Practitioner at Solano during

12   relevant portions of the events in the complaint.  In support of this fact, defendants cite the

13   stricken declaration of defendant Sanchez.  (ECF No. 75-1 at 2.)  However, Dr. Feinberg

14   identifies defendant Sanchez as a Nurse Practitioner in his declaration submitted in support of

15   defendants' supplemental summary judgment motion.  (ECF No. 75-7 at 4.)  Although plaintiff

16   mistakenly refers to defendant Sanchez as "Dr. Sanchez" in the complaint (ECF No. 1 at 1),

17   plaintiff does not dispute that defendant Sanchez is a Nurse Practitioner.  Accordingly, based on

18   Dr. Feinberg's declaration, the undersigned finds that it is undisputed that defendant Sanchez was

19   a Nurse Practitioner at all relevant times.

20         *Undisputed Fact No. 3:*  Defendant M. Kuersten was the Chief Medical Executive

21   ("CME") at Solano during relevant portions of events in the complaint.  Defendant Kuersten did

22   not serve as plaintiff's primary care physician ("PCP"); rather his treating physician was Dr.

23   Bentley.  (ECF No. 75-1 at 2 (defendants; undisputed fact no. 3 citing defendant Kuersten's

24   declaration (ECF No. 75-6 at 2)).)

25         *Undisputed Fact No. 4:*  Plaintiff alleges in his complaint that he suffered a back injury in

26   July 2018 while working at Solano, and that defendants were involved in treating his back

27   _____

28   [3]  The undersigned does not include defendants' undisputed facts based on defendant Sanchez's
     stricken declaration.

1   condition over the following months.  (ECF No. 75-1 at 2 (defendants' undisputed fact no. 4

2   citing plaintiff's complaint (ECF No. 1 at 4-7)).)

3          In undisputed fact no. 4, defendants also state that plaintiff received care for his back

4   condition from Solano medical staff during that time, including some care from defendant

5   Sanchez, while defendant Kuersten performed administrative reviews.  (ECF No. 75-2 at 2.)  In

6   support of this claim, defendants cite Dr. Feinberg's declaration submitted in support of

7   defendants' first summary judgment motion.  (See ECF No. 64-2 at §§9-30.)

8          *Undisputed Fact No. 5:*  On October 25, 2018, plaintiff saw Dr. Bentley for follow-up of

9   his consultation with a physiatrist regarding his back condition.  Based on the physiatrist's

10  observations, Dr. Bentley submitted a request for an MRI of plaintiff's lumbar spine.  (ECF No.

11  75-1 at 2 (defendants' undisputed fact no. 5 citing defendant Kuersten's declaration (ECF No. 75-

12  6 at 2)).)

13         *Undisputed Fact No. 6*:  On October 26, 2018, defendant Kuersten approved the request

14  for an MRI of plaintiff's lumbar spine based on the findings and recommendations by the

15  physiatrist and the lack of improvement of plaintiff's symptoms over a period of time.  (ECF No.

16  75-1 at 2-3 (defendants' undisputed fact no. 6 citing defendant Kuersten's declaration (ECF No.

17  75-6 at 2)).)

18         *Undisputed Fact No. 7:*  On or about November 7, 2018, plaintiff informed Solano

19  custody staff that he had safety concerns due to a drug debt owed to other inmates, and he was

20  placed in Administrative Segregation Unit housing for his safety.  (ECF No. 75-1 at 3

21  (defendants' undisputed fact no. 7 citing ECF No. 75-4 at 6 (Inmate Classification Committee

22  Review conducted at Solano concerning plaintiff dated November 7, 2018)).)

23         *Undisputed Fact No. 8:*  A subsequent Institutional Classification Committee ("ICC")

24  review regarding plaintiff's safety concerns noted that plaintiff requested to be housed at

25  California Training Facility ("CTF") or Substance Abuse Training Facility ("SATF").  The ICC

26  recommended that plaintiff receive a non-adverse transfer to CTF or SATF.  (ECF No. 75-1 at 3

27  (defendants' undisputed fact no. 8 citing ECF No. 75-4 at 6-7 (Inmate Classification Committee

28  review conducted at Solano concerning plaintiff dated November 14, 2018)).)

1   *Undisputed Fact No. 9*:  At the ICC hearing on November 14, 2018, plaintiff appeared to

2   agree with the committee's decision and he stated, "Thank you."  (ECF 75-1 at 3 (defendants'

3   undisputed fact no. 9 citing ECF No. 75-4 at 6-7 (Inmate Classification Committee review

4   conducted at Solano concerning plaintiff dated November 14, 2018)).)

5   *Undisputed Fact No. 10:*  As relevant to defendant' supplemental summary judgment

6   motion, plaintiff alleges that despite his ongoing medical appointments, no defendant placed a

7   medical hold on plaintiff while he was in the middle of the evaluation process, including awaiting

8   the outcome of the MRI concerning his lower back condition.  (ECF No. 75-1 at 3 (defendants'

9   undisputed fact no. 10 citing plaintiff's complaint (ECF No. 1), plaintiff's opposition to

10  defendants' first summary judgment motion (ECF No. 67)).)

11  *Undisputed Fact No. 11:*  Section 3.1.9 of the California Correctional Health Care System

12  Health Care Department Operations Manual ("HCDOM") reviews the procedures for health care

13  transfers of inmate patients.  Section 1.2.14 of the CCHCS HCDOM explains the Medical

14  Classification Chrono and its role in incorporating patients' medical needs with placement

15  decisions, including medical holds.  (ECF No. 75-1 at 3 (defendants' undisputed fact no. 11 citing

16  Dr. Feinberg's declaration (ECF No. 75-7 at 3, 4)).)

17  *Undisputed Fact No. 12*:  The Temporary Medical Hold Process is contained in Appendix

18  1, subsection (b)(1) of the CCHCS HCDOM attached to Dr. Feinberg's declaration.  This section

19  states, "A Temporary Medical Hold is used when a patient requires medically necessary health

20  care services, and it is medically prudent to provide these services at the institution where the

21  patient is currently housed."  In section (b)(1)(A), examples are given of patients who should be

22  reviewed for potential medical holds.  Of those, only example (A)3, "Patients undergoing a

23  diagnostic workup[,]" is applicable to plaintiff's situation in November and December 2018.

24  (ECF No.  75-1 at 3-4 (defendants' undisputed fact no. 7 citing Dr. Feinberg's declaration (ECF

25  No. 75-7 at 4) and defendant Kuersten's declaration (ECF No. 75-6 at 3); <u>see also</u> ECF No. 75-7

26  at 24 (appendix discussing Temporary Medical Hold Process)).)

27  *Undisputed Fact No. 13:*  The guidance concerning temporary medical holds provides

28  discretion for medical staff to determine whether or not a medical hold is necessary because the

13

1  patient should receive services at the institution where they are presently housed, or conversely,

2  that such services can be rendered at the patient's next institution.  (ECF No. 75-1 at 4

3  (defendants' undisputed fact no. 13 citing Dr. Feinberg's declaration (ECF No. 75-7 at 4)).)

4      *Undisputed Fact No. 14*:  The responsibility to place a temporary medical hold is

5  primarily the duty of a patient's PCP, working in conjunction with other medical staff, to include

6  the Receiving & Release ("R & R") Registered Nurse.  (ECF No. 75-1 at 4 (defendants'

7  undisputed fact no. 14 citing Dr. Feinberg's declaration (ECF No. 75-7 at 5).)  A facility's Chief

8  Medical Officer generally plays no role in the medical hold evaluation or decision process.  (ECF

9  No. 75-1 at 4 (defendants' undisputed fact no. 14 (citing defendant Kuersten's declaration (ECF

10  No. 75-6 at 4).)

11      *Undisputed Fact Nos. 15, 16*:  Defendants' undisputed fact nos. 15 and 16 are omitted

12  because they are based on defendant Sanchez's stricken declaration.  (ECF No. 75-1 at 4

13  (defendants' undisputed fact nos. 15, 16.)

14      *Undisputed Fact No. 17*:  The decision to prevent plaintiff's transfer to another facility, if

15  called for in a non-emergent situation, would have been made by his PCP and other designated

16  treating health care staff.  (ECF No. 75-1 at 5 (defendants' undisputed fact no. 17 citing Dr.

17  Feinberg's declaration (ECF No. 75-7 at 4-5)).)  Part of defendants' undisputed fact no. 17 is

18  omitted because it is based on defendant Sanchez's stricken declaration.  (ECF No. 75-1 at 5

19  (defendants' undisputed fact no. 17).)

20      *Undisputed Fact No. 18*:  On November 29, 2018, plaintiff was seen by Solano medical

21  staff for a complaint of pain associated with a chest wall contusion.  Plaintiff's MRI results were

22  available on November 20, 2018, and thus the attending physician, Dr. Chen, had access to the

23  imaging and reviewed them.  Dr. Chen assessed plaintiff's spinal stenosis in the medical record

24  notes as follows:  "1.  Spinal stenosis per MRI.  PT will be seen today for HEP for back."  (ECF

25  No. 75-1 at 5 (defendants' undisputed fact no. 18 citing Dr. Feinberg's declaration (ECF No. 75-7

26  at 5); see also ECF No. 75-7 at 49-51 (plaintiff's medical records from November 29, 2018)).)

27      *Undisputed Fact No. 19*:  Because plaintiff's MRI results had been received, medical staff

28  did not have a reason to place a medical hold on plaintiff's transfer to another institution at that

14

1    time.  Moreover, there was no indication that a medical hold was necessary because plaintiff

2    could continue being assessed for his back condition at his next institution.  The electronic health

3    record system ("EHRS") and unit health record ("UHR") could be accessed by medical staff at

4    that institution to evaluate plaintiff's condition and continue a treatment plan.  (ECF No. 75-1 at 5

5    (defendants' undisputed fact no. 19 citing Dr. Feinberg's declaration (ECF No. 75-7 at 5)).)

6          *Undisputed Fact No. 20:*  If a medical hold was necessary, it would have been the

7    responsibility of Dr. Bentley to place that hold, and was not the duty of defendant Sanchez or

8    defendant Kuersten.  Additionally, if the R & R Registered Nurse, upon screening plaintiff's

9    medical record for any contraindications to transfer, had felt that the pending MRI was such a

10   contraindication, they were to communicate their concern to the PCP, not to either defendant, to

11   initiate a medical hold.  (ECF No. 75-1 at 5 (defendants' undisputed fact no. 20 citing Dr.

12   Feinberg's declaration (ECF No. 75-7 at 5)).)

13         *Undisputed Fact No. 21*:  Defendant Kuersten had no role in deciding whether or not

14   plaintiff should have a temporary medical hold placed on his transfer away from Solano.  (ECF

15   No. 75-1 at 6 (defendants' undisputed fact no. 21 citing defendant Kuersten's declaration (ECF

16   No. 75-6 at 3)).)

17         In undisputed fact no. 21, defendants also claim that defendant Sanchez had no role in

18   deciding whether or not plaintiff should have a temporary medical hold placed on his transfer

19   away from Solano.  (ECF No. 75-1 at 6.)  In support of this claim, defendants cite defendant

20   Sanchez's stricken declaration.  (Id.)  However, the undersigned finds that the declaration of Dr.

21   Feinberg also makes clear that defendant Sanchez had no role in deciding whether or not plaintiff

22   should have a temporary medical hold placed.  In his declaration, Dr. Feinberg states that the

23   responsibility for placing the medical hold was on plaintiff's PCP, Dr. Bentley and/or the R&R

24   Registered Nurse.  (ECF No. 75-7 at 5.)  It is clear that defendant Sanchez was not the R&R

25   Registered Nurse.  Accordingly, based on Dr. Feinberg's declaration, the undersigned finds that it

26   is undisputed that defendant Sanchez had no role in deciding whether or not plaintiff should have

27   a temporary medical hold placed prior to his transfer away from Solano.

28         *Undisputed Fact No. 22:*  On December 4, 2018, plaintiff transferred to SATF.  According

                                        15

1   to plaintiff's Interfacility Transfer note, staff determined that a medical hold was not needed and

2   that transfer requirements, including medical clearance, were met. (ECF No. 75-1 at 6

3   (defendants' undisputed fact no. 22 citing ECF No. 75-7 (Interfacility Transfer Note)).)

4               C.   Discussion

5               As stated above in undisputed fact no. 10, plaintiff alleges that defendants acted with

6   deliberate indifference by failing to place a medical hold on him while he was awaiting the

7   outcome of the MRI concerning his lower back condition.  Defendants move for summary

8   judgment as to this claim on the grounds that it is undisputed that they had no role in the decision

9   about whether to place a medical hold on plaintiff's transfer while awaiting the MRI results.

10  Defendants contend that it is undisputed that temporary medical hold determinations are primarily

11  the responsibility of a PCP or particular medical staff, such as the R & R Nurse.

12              The undersigned agrees that the undisputed evidence shows that defendants Sanchez and

13  Kuersten had no role in the decision about whether to place a medical hold on plaintiff while the

14  MRI results were pending.  As stated by Dr. Feinberg in his declaration, "the onus for placing the

15  medical hold would rest with plaintiff's PCP, Dr. Bentley, and not with either defendant Nurse

16  Practitioner D. Sanchez or Dr. M. Kuersten."  (ECF No. 75-7 at 4.)  Accordingly, defendants

17  should be granted summary judgment on the grounds that they had no role in the decision about

18  whether to place a medical hold on plaintiff while the MRI results were pending.

19              Although not directly addressed by defendants, the undersigned herein also finds that

20  there is no evidence that defendants Sanchez or Kuersten had a role in the decision about whether

21  to place a medical hold on plaintiff after the MRI results became available on November 20,

22  2018.  (ECF No. 75-7 at 5.)

23              Dr. Feinberg's declaration indicates that it was the responsibility of plaintiff's PCP to

24  place a temporary medical hold after the MRI results became available.  (ECF No. 75-7 at 5.)  In

25  addition, as discussed herein, the R & R Nurse who reviewed plaintiff's records prior to his

26  transfer, and after the MRI results were available, also could have recommended a temporary

27  medical hold for plaintiff to his PCP.

28              Section 3.1.9(c)(3)(A) of the CCHCS HCDOM describes the Patient Transfer Process.

1   (ECF No. 75-7 at 11.)  This section provides that the R & R Nurse shall "screen the health record

2   for contraindications to transfer (e.g., inpatient, medical holds, potential medical holds, dental

3   holds, specialty appointments)."  (Id.)  This section goes on to state that the R & R Nurse shall

4   communicate with the patient's care team to resolve issues and concerns, and the PCP shall

5   update the Medical Classification Chrono and initiate a medical hold if necessary.  (Id. at 11-12.)

6   Therefore, these regulations provide that the R & R Nurse was to communicate any concerns

7   regarding plaintiff's transfer to plaintiff's PCP, Dr. Bentley, after screening plaintiff's records for

8   contraindications of transfer.

9        In his declaration, Dr. Feinberg states that the R &R Nurse, who screened plaintiff's

10   health records prior to his transfer, determined that a medical hold for plaintiff was not needed.

11   (Id. at 5.)  The December 4, 2018 Interfacility Transfer note indicates that the Registered Nurse

12   who screened plaintiff's records determined that a medical hold was not needed and that transfer

13   requirements were met.  (Id. at 46.)

14        For the reasons discussed above, the undersigned finds that defendants Kuersten and

15   Sanchez played no role in determining whether plaintiff should receive a temporary medical hold

16   after the MRI results became available.

17        In the summary judgment motion, defendants also argue that to the extent plaintiff alleges

18   that any staff improperly failed to place a medical hold on him, this is a difference of opinion

19   between plaintiff and his medical providers, and as such, cannot constitute deliberate indifference.

20   The undersigned need not reach this issue because defendants Kuersten and Sanchez should be

21   granted summary judgment on the grounds that they played no role in determining whether

22   plaintiff should receive a temporary medical hold prior to his transfer to SATF.

23        In his opposition, plaintiff contends that he was injured while being transferred from

24   Solano to SATF.  (ECF No. 80 at 3-4.)  Plaintiff contends that the discharge records from the

25   back surgery he received following his transfer to SATF state that he arrived at the hospital with

26   "T8-9 pathologic compression fracture with cord compression…"  (Id. at 8.)  Plaintiff contends

27   that because the results from the MRI and X-ray he received at Solano did not show a fracture, he

28   must have received this injury during his transport to SATF.  (Id. at 3.)

1    While plaintiff claims he suffered additional back injuries during the transport to SATF

2    based on the discharge records from his surgery, the undersigned finds that plaintiff is not

3    qualified to render an opinion regarding this matter.  Fed. R. Evid. 701 (layperson may not offer

4    an opinion based on scientific, technical or other specialized knowledge).

5    Plaintiff also contends that the transportation vehicle he rode in to SATF had no seatbelts,

6    harnesses, or other cushions to secure him.  (Id. at 4.)  Plaintiff contends that defendant Kuersten,

7    as the CME and member of the Institutional Management Committee for Solano, had to have

8    known of the conditions of the transfer vans.  (Id.)  Plaintiff argues, "Why did [defendant

9    Kuersten] believe that the transfer posed a little risk of harm to plaintiff?"  (Id.)  Plaintiff

10    contends that when defendant Kuersten saw the transfer request for plaintiff, he should have

11    placed a medical hold on plaintiff or had plaintiff transferred in a van with a wheelchair lift or

12    harness.  (Id. at 5.)

13    Plaintiff provides no evidence supporting his claim that defendant Kuersten knowingly

14    allowed him to be transported to SATF in van that could not accommodate wheelchairs.

15    Moreover, defendant Kuersten's declaration indicates that he was not involved in decisions

16    regarding plaintiff's transfer.  In his declaration, defendant Kuersten states that after his October

17    26, 2018 administrative review of the request for plaintiff's MRI, he had no further involvement

18    in any aspect of decisions regarding plaintiff's medical care or to place a temporary medical hold

19    that would prevent plaintiff's transfer to another prison.  (ECF No. 75-6 at 2-3.)  Defendant

20    Kuersten states that any evaluations of plaintiff's medical conditions or decisions effecting his

21    medical treatment were the responsibility of his PCP, Dr. Bentley, or line medical staff at the

22    clinics where he was seen.  (Id. at 3.)  Accordingly, the undersigned finds that plaintiff's claim

23    that defendant Kuersten knowingly allowed him to be transported in a van that did not

24    accommodate his wheelchair is unsupported.[4]

25    Defendants also argue that they are entitled to qualified immunity.  The doctrine of

26

27    ─────────────────────
[4] The undersigned observes that the Interfacility Transfer Record states that plaintiff's condition
was stable, he was transported in an "ADA Van," and that the only healthcare appliance to be

28    transferred with plaintiff was a walker.  (ECF No. 75-7 at 46.)

18

qualified immunity protects "government officials ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). As the Supreme Court has noted, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." See Malley v. Briggs, 475 U.S. 335, 341 (1986). In evaluating qualified immunity, the court must determine: (1) whether the facts, viewed in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right; and (2) whether the right was clearly established at the time of the alleged violation such that a reasonable person in the defendant's position would have understood that his actions violated that right. Saucier v. Katz, 533 U.S. 194, 201–02 (2001) (receded from in Pearson v. Callahan, 555 U.S. 223 (1009) (holding that while Saucier's two step sequence for resolving government official's qualified immunity claims is often appropriate, courts may exercise their sound discretion in deciding which of the two prongs should be addressed first)). If the answer to either inquiry is "no," then the defendant is entitled to qualified immunity and may not be held personally liable for his or her conduct. Glenn v. Washington Cty., 673 F.3d 864, 870 (9th Cir. 2011).

Because the undersigned finds that defendants did not violate the Eighth Amendment, no further discussion of qualified immunity is warranted.[5]

Accordingly, IT IS HEREBY RECOMMENDED that defendants' supplemental summary judgment motion (ECF No. 75) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the

---

[5] Defendants point out that plaintiff's transfer was initiated after plaintiff expressed safety concerns to correctional staff. Defendants contend that plaintiff is claiming that medical staff violated his Eighth Amendment rights for allegedly failing to stop a transfer that was in response to his statements to custody staff, a transfer that plaintiff agreed to.

1   objections shall be filed and served within fourteen days after service of the objections.  The

2   parties are advised that failure to file objections within the specified time may waive the right to

3   appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

4   Dated:  March 9, 2023

5

6   KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

7

8

9

10  Pr58.sj(supp)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20